## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT KNOXVILLE

**FILED**

2012 JAN 23 ☐ 3: 27

U.S. DISTRICT COURT
EASTERN DIST. TENN.

|  |  |
|---|---|
| **SOUTHERN TRUST INSURANCE COMPANY,** | ) |
| **Plaintiff,** | ) |
| vs. | ) Civil No. 3:12cv 34 _____DEPT. CLERK |
| **DUSTIN A. MCNALLY, ANNA J. NORTHERN, THOMAS F. NORTHERN, SR., and STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,** | ) Phillips / Guyton ) ) ) ) |
| **Defendants.** | ) |

### COMPLAINT FOR DECLARATORY JUDGMENT

Comes now the Plaintiff, Southern Trust Insurance Company, by and through counsel, and for its cause of action in the form of a Complaint for Declaratory Judgment pursuant to 28 U.S.C §§ 2201-2202 *et seq* and T.C.A. § 29-14-101 et seq., states as follows:

1.      The Plaintiff is a Georgia corporation.

2.      Defendant Dustin A. McNally is a citizen and resident of Blount County, Tennessee and may be served with process at his last known address of 404 Ocoee Drive, Maryville, Tennessee 37801.

3.      Defendants Anna J. Northern and Thomas F. Northern, Sr. are citizens and residents of Jefferson County, Tennessee and may be served with process at their last known address of 924 Whippoorwill Drive, Talbott, Tennessee 37877.

4.      That State Farm Mutual Automobile Insurance Company is a foreign corporation authorized to do business within the state of Tennessee and may be served with process through the Tennessee Department of Commerce and Insurance.

5.     That the jurisdiction of this court is established by virtue of the diversity of

citizenship of the parties herein and that the potential damages that the plaintiff is exposed to in the

underlying tort claim, set forth more fully below and the liability insurance coverage against which

the underlying tort claim has been made exceed $75,000.00.

6.     That on June 14, 2011, the Plaintiff issued to Matthew A. Bumbalough a

Tennessee personal automobile insurance policy under policy no.: APV1088148 with a policy

period of January 10, 2011 to January 10, 2012. *(See policy, **Exhibit 1)*** That under the terms

and conditions of the Tennessee personal automobile insurance policy provided by the Plaintiff

to Matthew A. Bumbalough, automobile liability insurance coverage was provided with the

following insuring agreement:

## PART A – LIABILITY COVERAGE
### INSURING AGREEMENT

A.     We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident...

B.     "Insured" as used in this Part means:
     1.     You or any "family member" for the ownership, maintenance, or use of any auto or "trailer."
     2.     Any person using "your covered auto."

The Tennessee personal automobile insurance policy further provides the following

exclusion to the liability coverage:

### EXCLUSIONS

A.     We do not provide Liability Coverage for any "insured":
     8.     Using a vehicle without a reasonable belief that that "insured" is entitled to do so.  This Exclusion does not apply to a "family member" using "your covered auto" which is owned by you.

Under DEFINITIONS, the following is provided:

F.     "Family member" means a person related to you by blood, marriage, or adoption who is a resident of your household."

7.     That on June 14, 2011, the Tennessee Personal Automobile Insurance Policy issued by the Plaintiff to Matthew A. Bumbalough provided liability coverage for a 2001 Dodge Dakota pickup truck.

8.     That on June 14, 2011, Defendant Dustin A. McNally was an unlicensed driver, whose Tennessee driver's license was placed on a suspended/revoked status.

9.     That on June 12, 2011, Matthew A. Bumbalough delivered the 2001 Dodge Dakota pickup truck to Defendant Dustin A. McNally, at defendant McNally's residence, for the sole purpose of cleaning the vehicle and detailing the vehicle in the driveway of Mr. McNally's residence. Defendant McNally did not have permission, express or implied, to drive the vehicle for his personal use.

10.    That on June 14, 2011, Defendant Dustin A. McNally, as an unlicensed driver in the state of Tennessee, drove the 2001 Dodge Dakota pickup truck from Maryville, Tennessee to Jefferson County, Tennessee without the permission, express or implied, from Matthew A. Bumbalough when he was involved in a motor vehicle collision with Defendant Anna J. Northern in Jefferson County, Tennessee.

11.    That as a result of the motor vehicle collision involving Defendants Dustin A. McNally and Anna J. Northern, a claim for bodily injuries and damages has been made by Anna J. Northern against the Tennessee Personal Automobile Insurance Policy issued by Southern Trust Insurance Company to Matthew A. Bumbalough for the 2001 Dodge Dakota pickup truck.

12.    That as a result of the motor vehicle collision involving Defendants Anna Norris and Dustin A. McNally, a Summons and Complaint has been filed in the Jefferson County Circuit Court in the matter of <u>Anna J. Northern and husband, Thomas F. Northern, Sr. v. Matthew Bumbalough and Dustin A. McNally</u> bearing docket no.: 23,137-IV. *(Please see attached **Exhibit 2**)*

13.    That based upon Defendant Dustin A. McNally's non-permissive use of the 2001 Dodge Dakota pickup truck, the Plaintiff brings this declaratory judgment action to secure a judicial determination that the Plaintiff owes no contractual duties of indemnity or defense as a result of the motor vehicle collision of June 14, 2011 involving Defendants Dustin A. McNally and Anna J. Northern.

14.    That Defendant State Farm Mutual Automobile Insurance Company is the uninsured motorist insurance carrier for Defendant Anna J. Northern. That State Farm Mutual Automobile Insurance Company has also received notice of Ms. Northern's intent to pursue an uninsured motorist insurance claim as a result of the motor vehicle accident of June 14, 2011.

WHEREFORE, the Plaintiff prays as follows:

a.    that service of process issue and be served upon each of the Defendants requiring them to answer according to law;

b.    that upon a hearing of this matter, a judgment be entered against the Defendants declaring that the Plaintiff owes no contractual duties of indemnity or defense as a result of the motor vehicle collision on June 14, 2011 involving Defendants Dustin A. McNally and Anna J. Northern; and

c.    that the costs of this cause be taxed against the Defendants and that the Plaintiff be awarded its discretionary costs against the Defendants.

Respectfully submitted this ___20ᵗʰ___ day of __January__, 2012.

**TRAMMELL, ADKINS & WARD, P.C.**

By _____

Terrill L. Adkins, Esq., BPR #013138
Attorney for Southern Trust Insurance Company
P.O. Box 51450
Knoxville, Tennessee 37950
865/330-2577

## COST BOND

We do hereby acknowledge ourselves as surety for the costs in this cause in accordance with T.C.A. 20-12-120.

TRAMMELL, ADKINS & WARD, P.C.

By _____
      Terrill L. Adkins

APV 1088148    COMPANY COPY

**Southern Trust** Southern Trust Insurance Company
Macon, Georgia 31202-0250

RENEWAL DECLARATION * * EFFECTIVE 01/10/2011

| POLICY NUMBER | POLICY PERIOD FROM | TO | COVERAGE IS PROVIDED IN THE | AGENCY P. |
|---|---|---|---|---|
| APV 1088148 | 01/10/2011 | 01/10/2012 | SOUTHERN TRUST INSURANCE CO. | 1036***0C |

**NAMED INSURED AND ADDRESS**                    **AGENT**

MATT BUMBALOUGH
2204 HIGHLAND ROAD
MARYVILLE TN
37801

VALLEY INSURANCE AGENCY
P.O. BOX 639
LOUISVILLE, TN
37777
TELEPHONE (865) 977-7778

---

**VEHICLES COVERED**

| UNIT | ST | TER | YR | MAKE-DESCRIPT | SERIAL NUMBER | AGE | SYM | CLASS | ST AM | CHG DATE |
|---|---|---|---|---|---|---|---|---|---|---|
| 001 | TN | 028 | 2001 | DODGE DAKOTA | 1B7HL2AN01S345325 6 | 10 | 811220 | | 01/10/2011 |
| 002 | TN | 028 | 2001 | CHEVY CAVALIE | 1G1JC124517328736 6 | 10 | 811120 | | 01/10/2011 |
| 003 | TN | 028 | 2006 | MAZDA 6S | 1YVHP80C065N67768 6 | 16 | 811120 | | 01/10/2011 |

INSURANCE IS PROVIDED WHERE A PREMIUM IS SHOWN FOR THE COVERAGE

| COVERAGE | LIMITS OF LIABILITY | PREMIUMS |||
|---|---|---|---|---|
| | | UNIT 1 | 2 | 3 |
| BODILY INJURY | $25,000 EA PER $50,000 EA OCC • | 122.00 | 104.00 | 104.00 |
| PROPERTY DAMAGE | $25,000 EACH OCCURRENCE • • • | 157.00 | 133.00 | 133.00 |
| MEDICAL PAYMENTS | $5,000 PER PERSON • • • • • | 16.00 | 13.00 | 13.00 |
| UNIN MOTORIST BI | $25,000 EA PER $50,000 EA OCC • | 16.00 | 16.00 | 16.00 |
| UNIN MOTORIST PD | $25,000 EACH OCCURRENCE • • | 24.00 | 24.00 | 24.00 |
| OTHER THAN COLL | $500 DEDUCTIBLE • • • • • | | | 63.00 |
| COLLISION | $500 DEDUCTIBLE • • • • • | | | 170.00 |
| TOWING & LABOR | $50 FOR EACH DISABLEMENT • • • | | | 7.00 |
| LOSS OF USE | $20 PER DAY/$600 AGGREGATE • • | | | 14.00 |
| | TOTAL BY UNIT | 337.00 | 292.00 | 545.00 |
| | TOTAL TERM PREMIUM | $1,273.00 | | |

PASSIVE RESTRAINT DISCOUNT APPLIED UNIT 1
PASSIVE RESTRAINT DISCOUNT APPLIED UNIT 2
PASSIVE RESTRAINT DISCOUNT APPLIED UNIT 3

| DRIVER ID | DRIVER NAME | LICENSE NUMBER | BIRTH DATE |
|---|---|---|---|
| 01 | MATT BUMBALOUGH | 085069721 | 06/15/1985 |
| 02 | ASHLEY N BUMBALOUGH | 105667016 | 10/15/1988 |

**APPLICABLE FORMS**

| FORM # | DATE | UNIT | FORM # | DATE | UNIT | FORM # | DATE | UNIT | FORM # | DATE | UNIT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PP0001 | 01/05 | ALL | PP0192 | 01/09 | ALL | PPI301 | 12/99 | ALL | PP0367 | 11/00 | ALL |
| PP0452 | 01/05 | 001 | PP0452 | 01/05 | 002 | PP0452 | 01/05 | 003 | PP0303 | 04/86 | 003 |

LOSS PAYEE FOR UNIT #003
TVA FEDERAL CREDIT UNION
P O BOX 15994
KNOXVILLE TN        37901



APY 1088148     COMPANY COPY

**Southern Trust** Southern Trust Insurance Company RENEWAL DECLARATION OF POLICY   APY 1088148
Southern Trust Insurance Company    Macon, Georgia 31202-0250          PERSONAL AUTOMOBILE

RENEWAL DECLARATION * * EFFECTIVE 01/10/2011

| POLICY NUMBER | POLICY PERIOD FROM | TO | COVERAGE IS PROVIDED IN THE | AGENCY |
|---|---|---|---|---|
| APY 1088148 | 01/10/2011 | 01/10/2012 | SOUTHERN TRUST INSURANCE CO. | 1013***00 |

**NAME INSURED AND ADDRESS**

MATT BUMBALOUGH
2204 HIGHLAND ROAD
MARYVILLE TN
                37801

**AGENT**

VALLEY INSURANCE AGENCY
P.O. BOX 639
LOUISVILLE, TN
                37777
TELEPHONE (365) 977-7778

- - - - - - - - - - - - AFTER HOURS CLAIM REPORTING - - - - - - - - - - - -
TO REPORT A CLAIM WHEN YOUR AGENT IS CLOSED, YOU MAY REPORT YOUR CLAIM DIRECTLY
TO SOUTHERN TRUST INSURANCE COMPANY: 1-800-476-5566(TOLL FREE) OR (478)474-0555
(LOCAL), BETWEEN THE HOURS OF 4:30 PM TO 8:00 AM, MONDAY THROUGH FRIDAY AND AT
ANY HOUR ON WEEKENDS AND HOLIDAYS.
ALTERNATIVELY, YOU MAY REPORT TO YOUR AGENT AT THE EARLIEST OPPORTUNITY.

                                        JOHN HOUSER                    11/29/2010
POLICY PERIOD 12:01 AM STANDARD TIME            AUTHORIZED REPRESENTATIVE    DATE

# PERSONAL AUTO POLICY

## AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

1. The end of 90 days following the spouse's change of residency;

2. The effective date of another policy listing the spouse as a named insured; or

3. The end of the policy period.

**B.** "We", "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means:

1. In;

2. Upon; or

3. Getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in **1.** or **2.** above.

**J.** "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. A "newly acquired auto".

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   **a.** Breakdown;

   **b.** Repair;

   **c.** Servicing;

   **d.** Loss; or

   **e.** Destruction.

   This Provision **(J.4.)** does not apply to Coverage For Damage To Your Auto.

**K.** "Newly acquired auto":

1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

   **a.** A private passenger auto; or

   **b.** A pickup or van, for which no other insurance policy provides coverage, that:

      **(1)** Has a Gross Vehicle Weight Rating of 10,000 lbs. or less; and

      **(2)** Is not used for the delivery or transportation of goods and materials unless such use is:

         **(a)** Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

         **(b)** For farming or ranching.

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner. However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

b. Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

c. Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

(1) 14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

## PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

2. Any person using "your covered auto".

3. For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

4. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision **(B.4.)** applies only if the person or organization does not own or hire the auto or "trailer".

### SUPPLEMENTARY PAYMENTS

We will pay on behalf of an "insured":

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

Case 3:12-cv-00034-WOB-HBG Document 1 Filed 01/23/12 Page 9 of 24 PageID #: 9

**4.** Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

**5.** Other reasonable expenses incurred at our request.

These payments will not reduce the limit of liability.

## EXCLUSIONS

**A.** We do not provide Liability Coverage for any "insured":

**1.** Who intentionally causes "bodily injury" or "property damage".

**2.** For "property damage" to property owned or being transported by that "insured".

**3.** For "property damage" to property:

**a.** Rented to;

**b.** Used by; or

**c.** In the care of;

that "insured".

This Exclusion **(A.3.)** does not apply to "property damage" to a residence or private garage.

**4.** For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion **(A.4.)** does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

**5.** For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion **(A.5.)** does not apply to a share-the-expense car pool.

**6.** While employed or otherwise engaged in the "business" of:

**a.** Selling;

**b.** Repairing;

**c.** Servicing;

**d.** Storing; or

**e.** Parking;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion **(A.6.)** does not apply to the ownership, maintenance or use of "your covered auto" by:

**a.** You;

**b.** Any "family member"; or

**c.** Any partner, agent or employee of you or any "family member".

**7.** Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion **A.6.**

This Exclusion **(A.7.)** does not apply to the maintenance or use of a:

**a.** Private passenger auto;

**b.** Pickup or van; or

**c.** "Trailer" used with a vehicle described in **a.** or **b.** above.

**8.** Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(A.8.)** does not apply to a "family member" using "your covered auto" which is owned by you.

**9.** For "bodily injury" or "property damage" for which that "insured":

**a.** Is an insured under a nuclear energy liability policy; or

**b.** Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

A nuclear energy liability policy is a policy issued by any of the following or their successors:

**a.** Nuclear Energy Liability Insurance Association;

**b.** Mutual Atomic Energy Liability Underwriters; or

**c.** Nuclear Insurance Association of Canada.

**B.** We do not provide Liability Coverage for the ownership, maintenance or use of:

**1.** Any vehicle which:

**a.** Has fewer than four wheels; or

**b.** Is designed mainly for use off public roads.

This Exclusion **(B.1.)** does not apply:

**a.** While such vehicle is being used by an "insured" in a medical emergency;

**b.** To any "trailer"; or

**c.** To any non-owned golf cart.

**2.** Any vehicle, other than "your covered auto", which is:

**a.** Owned by you; or

**b.** Furnished or available for your regular use.

**3.** Any vehicle, other than "your covered auto", which is:

**a.** Owned by any "family member"; or

**b.** Furnished or available for the regular use of any "family member".

However, this Exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:

a. Owned by a "family member"; or

b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible insurance.

## PART B – MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and

2. Sustained by an "insured".

We will pay only those expenses incurred for services rendered within 3 years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member":

a. While "occupying"; or

b. As a pedestrian when struck by;

a motor vehicle designed for use mainly on public roads or a trailer of any type.

2. Any other person while "occupying" "your covered auto".

## EXCLUSIONS

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained ' while "occupying" any motorized vehicle having fewer than four wheels.

2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion **(2.)** does not apply to a share-the-expense car pool.

3. Sustained while "occupying" any vehicle located for use as a residence or premises.

4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".

5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by you; or

   b. Furnished or available for your regular use.

6. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:

   a. Owned by any "family member"; or

   b. Furnished or available for the regular use of any "family member".

   However, this Exclusion **(6.)** does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion **(7.)** does not apply to a "family member" using "your covered auto" which is owned by you.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion **(8.)** does not apply to "bodily injury" sustained while "occupying" a:

   a. Private passenger auto;

   b. Pickup or van; or

   c. "Trailer" used with a vehicle described in **a.** or **b.** above.

9. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection; or

   e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. Nuclear reaction;

    b. Radiation; or

    c. Radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

    a. Competing in; or

    b. Practicing or preparing for;

    any prearranged or organized racing or speed contest.

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. "Insureds";

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

   1. Part **A** or Part **C** of this policy; or

   2. Any Underinsured Motorists Coverage provided by this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

Case 3:12-cv-00034-WOB-HBG   Document 1   Filed 01/23/12   Page 12 of 24   PageID #: 12

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:

   a. You or any "family member";

   b. A vehicle which you or any "family member" are "occupying"; or

   c. "Your covered auto".

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

3. Owned by any governmental unit or agency.

4. Operated on rails or crawler treads.

5. Designed mainly for use off public roads while not on public roads.

6. While located for use as a residence or premises.

### EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:

1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":

1. If that "insured" or the legal representative settles the "bodily injury" claim and such settlement prejudices our right to recover payment.

2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.

3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

 © ISO Properties, Inc., 2003
Case 3:12-cv-00034-WOB-HBG   Document 1   Filed 01/23/12   Page 13 of 24   PageID #: 13

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

**1.** "Insureds";

**2.** Claims made;

**3.** Vehicles or premiums shown in the Declarations; or

**4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

**1.** Part **A** or Part **B** of this policy; or

**2.** Any Underinsured Motorists Coverage provided by this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D.** We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

**1.** Workers' compensation law; or

**2.** Disability benefits law.

## OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

**1.** Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

**2.** Any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto", shall be excess over any collectible insurance providing such coverage on a primary basis.

**3.** If the coverage under this policy is provided:

**a.** On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

**b.** On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

**A.** If we and an "insured" do not agree:

**1.** Whether that "insured" is legally entitled to recover damages; or

**2.** As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

**1.** Pay the expenses it incurs; and

**2.** Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding as to:

**1.** Whether the "insured" is legally entitled to recover damages; and

**2.** The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

Case 3:12-cv-00034-WOB-HBG Document 1 Filed 01/23/12 Page 14 of 24 PageID #: 14

## INSURING AGREEMENT

**A.** We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

**1.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

**2.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

**B.** "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

**1.** Missiles or falling objects;

**2.** Fire;

**3.** Theft or larceny;

**4.** Explosion or earthquake;

**5.** Windstorm;

**6.** Hail, water or flood;

**7.** Malicious mischief or vandalism;

**8.** Riot or civil commotion;

**9.** Contact with bird or animal; or

**10.** Breakage of glass.

If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

**C.** "Non-owned auto" means:

**1.** Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or

**2.** Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:

**a.** Breakdown;

**b.** Repair;

**c.** Servicing;

**d.** Loss; or

**e.** Destruction.

## TRANSPORTATION EXPENSES

**A.** In addition, we will pay, without application of a deductible, up to a maximum of $600 for:

**1.** Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:

**a.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

**b.** "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

**2.** Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:

**a.** Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".

**b.** "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".

However, the most we will pay for any expenses for loss of use is $20 per day.

**B.** Subject to the provisions of Paragraph **A.**, if the loss is caused by:

**1.** A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:

**a.** Beginning 48 hours after the theft; and

**b.** Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.

**2.** Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

## EXCLUSIONS

We will not pay for:

1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.

2. Damage due and confined to:

   a. Wear and tear;

   b. Freezing;

   c. Mechanical or electrical breakdown or failure; or

   d. Road damage to tires.

   This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".

3. Loss due to or as a consequence of:

   a. Radioactive contamination;

   b. Discharge of any nuclear weapon (even if accidental);

   c. War (declared or undeclared);

   d. Civil war;

   e. Insurrection; or

   f. Rebellion or revolution.

4. Loss to any electronic equipment that reproduces, receives or transmits audio, visual or data signals. This includes but is not limited to:

   a. Radios and stereos;

   b. Tape decks;

   c. Compact disk systems;

   d. Navigation systems;

   e. Internet access systems;

   f. Personal computers;

   g. Video entertainment systems;

   h. Telephones;

   i. Televisions;

   j. Two-way mobile radios;

   k. Scanners; or

   l. Citizens band radios.

   This Exclusion (4.) does not apply to electronic equipment that is permanently installed in "your covered auto" or any "non-owned auto".

5. Loss to tapes, records, disks or other media used with equipment described in Exclusion 4.

6. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

   This Exclusion (6.) does not apply to the interests of Loss Payees in "your covered auto".

7. Loss to:

   a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or

   b. Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

      (1) Cooking, dining, plumbing or refrigeration facilities;

      (2) Awnings or cabanas; or

      (3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

   This Exclusion (7.) does not apply to a:

   a. "Trailer", and its facilities or equipment, which you do not own; or

   b. "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

      (1) Acquire during the policy period; and

      (2) Ask us to insure within 14 days after you become the owner.

8. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

9. Loss to equipment designed or used for the detection or location of radar or laser.

10. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

    a. Special carpeting or insulation;

    b. Furniture or bars;

    c. Height-extending roofs; or

    d. Custom murals, paintings or other decals or graphics.

    This Exclusion (10.) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

11. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

    a. Selling;

    b. Repairing;

c. Servicing;

d. Storing; or

e. Parking;

vehicles designed for use on public highways. This includes road testing and delivery.

12. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

13. Loss to, or loss of use of, a "non-owned auto" rented by:

a. You; or

b. Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

## LIMIT OF LIABILITY

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:

1. Any "non-owned auto" which is a trailer is $1500.

2. Electronic equipment that reproduces, receives or transmits audio, visual or data signals, which is permanently installed in the auto in locations not used by the auto manufacturer for installation of such equipment, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

© ISO Properties, Inc., 2003

Case 3:12-cv-00034-WOB-HBG Document 1 Filed 01/23/12 Page 17 of 24 PageID #: 17

## PART E – DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with the following duties is prejudicial to us:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

   **a.** To physical exams by physicians we select. We will pay for these exams.

   **b.** To examination under oath and subscribe the same.

4. Authorize us to obtain:

   **a.** Medical reports; and

   **b.** Other pertinent records.

5. Submit a proof of loss when required by us.

**C.** A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F – GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

**A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph **(C.)** does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A,** no legal action may be brought against us until:

1. We agree in writing that the "insured" has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## OUR RIGHT TO RECOVER PAYMENT

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this Paragraph **(A.)** do not apply under Part **D,** against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

## POLICY PERIOD AND TERRITORY

**A.** This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

## TERMINATION

### A. Cancellation

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   **a.** Returning this policy to us; or

   **b.** Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

   **a.** At least 10 days notice:

   (1) If cancellation is for nonpayment of premium; or

(2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

   **b.** At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   **a.** For nonpayment of premium; or

   **b.** If your driver's license or that of:

   (1) Any driver who lives with you; or

   (2) Any driver who customarily uses "your covered auto";

   has been suspended or revoked. This must have occurred:

   (1) During the policy period; or

   (2) Since the last anniversary of the original effective date if the policy period is other than 1 year; or

   **c.** If the policy was obtained through material misrepresentation.

### B. Nonrenewal

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

### C. Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

© ISO Properties, Inc., 2003

Case 3:12-cv-00034-WOB-HBG   Document 1   Filed 01/23/12   Page 19 of 24   PageID #: 19

## D. Other Termination Provisions

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

B. Coverage will only be provided until the end of the policy period.

## TWO OR MORE AUTO POLICIES

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

© ISO Properties, Inc., 2003

# IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, TENNESSEE

ANNA J. NORTHERN and husband,  
THOMAS E. NORTHERN, SR.,

    Plaintiffs,

vs.

DUSTIN A. McNALLY and  
MATTHEW A. BUMBALOUGH,

    Defendants.

\* \* \* \* \* \* \* \* \* \* \*

No.: 23,137 IV

JURY DEMANDED

COUNTY OF JEFFERSON  
I, Penny O. Murphy, Clerk  
certify the foregoing  
copy as filed in my office this  
Witness my hand and official  
Tennessee  
This the ___ day of ___

## COMPLAINT

1. The Plaintiffs, Anna J. Northern and Thomas E. Northern, Sr., are husband and wife and at all times material herein, were residents of Hamblen County, Tennessee.

2. The Defendant, Dustin A. McNally ("McNally") is and at all times material herein was a resident of Blount County, Tennessee.

3. The Defendant, Matthew A. Bumbalough ("Bumbalough") is and at all times material herein was a resident of Blount County, Tennessee.

4. At all times material herein McNally was driving a motor vehicle which was owned by Bumbalough and was operating the vehicle with the knowledge, consent and permission of Bumbalough. McNally and Bumbalough are jointly and severally liable for all damages caused by McNally.

5. On or about June 14, 2011 Anna J. Northern was driving her motor vehicle on East Broadway Boulevard in Jefferson City, Jefferson County, Tennessee. At the same time and place McNally was driving the Bumbalough vehicle on the same road and in the same direction as the Plaintiff and was located immediately behind her vehicle.

EVANS & BEIER  
ATTORNEYS AT LAW  
MORRISTOWN, TN 37816



EXHIBIT 2

FILED 12/28 20 11 AM

AT 9:W O'CLOCK P.M  
PENNY O. MURPHY, CLERK

6. Anna J. Northern slowed her vehicle for turning traffic, but McNally failed to slow his vehicle causing it to crash into the rear of the Northern vehicle.

7. McNally operated the Bumbalough vehicle in a careless and negligent manner.

8. McNally was negligent in failing to keep a lookout ahead and in failing to keep his vehicle under due and proper control under the circumstances then and there existing.

9. At the time and place of said collision McNally violated certain sections of the Tennessee Code Annotated, the violations of which constitute negligence per se and include the following:

    A.    This Defendant followed the Northern vehicle more closely than was reasonable and prudent, having due regard for the speed of the vehicles and the traffic upon and the condition of the highway in violation of T.C.A. §55-8-124.

    B.    McNally failed to immediately stop his vehicle at the scene of the accident in which Anna J. Northern was injured and in fact he left the scene immediately after the wreck in violation of T.C.A. §55-10-101.

10. The Defendant's violation of the foregoing common law duties and statutory rules of the road were the sole and proximate cause of the collision and the injuries and damages suffered by Plaintiffs.

11. As a result of the collision the Plaintiff, Anna J. Northern received serious and disabling injuries. As a consequence of these injuries, this Plaintiff required substantial medical treatment and care and suffered great physical pain and mental anguish.

12. The Plaintiff, Thomas E. Northern, Sr., has been denied valuable services, society and consortium of his wife, Anna J. Northern as a consequence of these injuries to his wife.

WHEREFORE, PLAINTIFF, ANNA J. NORTHERN, DEMANDS JUDGMENT AGAINST THE DEFENDANTS IN THE SUM OF $100,000.00 AND THE COSTS OF THIS CAUSE AND THE PLAINTIFF, THOMAS E. NORTHERN, SR. DEMANDS JUDGMENT AGAINST THE DEFENDANTS IN THE AMOUNT OF $30,000.00 AND THE COSTS OF THE CAUSE. BOTH PLAINTIFFS DEMAND A JURY TO TRY THIS ACTION.

C. DWAINE EVANS (BPR 4701)
Attorney for Plaintiffs
P. O. Box 1754
Morristown, Tennessee 37816-1754
(423) 587-2800

## COST BOND

I secure the costs of this cause not to exceed $500.00

C. DWAINE EVANS

# IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, TENNESSEE

ANNA J. NORTHERN and husband,  *
THOMAS E. NORTHERN, SR.,        *
                                *
    Plaintiffs,              *
                                *
vs.                             *    No.: _____
                                *    **JURY DEMANDED**
DUSTIN A. McNALLY and           *
MATTHEW A. BUMBALOUGH,          *
                                *
    Defendants.              *

## APPENDIX TO COMPLAINT

Plaintiffs aver that at the time of this incident, Defendant Dustin A McNally was an uninsured or underinsured motorist, operating an uninsured or underinsured vehicle as defined by T.C.A. §56-7-1201, et seq., and by the terms and conditions of a certain insurance policy issued by the State Farm Insurance Company to the Plaintiffs, Anna J. Northern and Thomas E. Northern, Sr.

Plaintiffs here and now give notice to State Farm Insurance Company that they intend to rely upon the uninsured or underinsured motorist coverage provided by said insurance policy and by T.C.A. §56-7-1201, et seq., and that they have caused a copy of the summons and Complaint in this cause to be issued and served upon the insurer, State Farm Insurance Company, in compliance with T.C.A. §56-7-1206.

[State Farm Insurance Company Policy No. 114681742A]

This the _ZZ_ day of December, 2011.

C. DWAINE EVANS (BPR 4701)
**Attorney for Plaintiffs**
P. O. Box 1754
Morristown, Tennessee 37816-1754
(423) 587-2800